IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| OVIDIO DANILO ALONZO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:06CV00800 |
| ) | |
| YANIRA NINOSKA PINEDA CLAUDINO ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

MEMORANDUM OPINION

TILLEY, District Judge

This matter is before the Court on a petition filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention" or "Convention"), Oct. 25, 1980, T.I.A.S. 11,670, 19 I.L.M. 1501 (1980), and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11610. (Doc. # 2.) Petitioner is seeking the return of his daughter to Honduras on the ground that she was illegally abducted by her mother in violation of a valid Honduran custody order. For the reasons set forth below, the petition is GRANTED.

I.

Petitioner Ovidio Danilo Alonzo (Alonzo) and Respondent Yanira Ninoska Pineda Claudino (Ms Pineda), both citizens of Honduras, were married in Tegucigalpa, Honduras on May 2, 1997. The couple has one child, Maria Jose

Alonzo Claudino ("Maria Jose"), who was born in Tegucigalpa, Honduras on November 16, 1998. Mr. Alonzo and Ms. Pineda divorced on April 19, 2002. On May 8, 2002, Ms. Pineda was granted "guardianship and care" of Maria Jose by the Second Civil Court of the Family in Tegucigalpa, Honduras, with Mr. Alonzo retaining joint "parental authority." (Resp't Ex. 2.)

In 2003, following a failed business venture, Ms. Pineda left Honduras for the United States with the initial intention to remain for two years. For approximately the next year, Maria Jose remained in Honduras under the supervision of Ms. Pineda's parents. On August 10, 2004, Mr. Alonzo was granted "Provisional Guardianship and Care" of Maria Jose by the Second Civil Court of the Family in Tegucigalpa, Honduras. (Pet'r Exs. 1, 2.)

On December 20, 2004, Mr. Alonzo and Maria Jose traveled to the United States under a six-month tourist visa to visit Ms. Pineda, who was living in Durham, North Carolina. Ms. Pineda, admittedly, is residing in the United States as an illegal alien. Following Maria Jose and Mr. Alonzo's arrival, Ms. Pineda took their passports to prevent them from returning to Honduras. During their stay in the United States, Maria Jose was enrolled in school and Mr. Alonzo worked for several months, opened a bank account, obtained a driver's license, and assisted Ms. Pineda with purchasing a car.

On June 14, 2005, one week before the expiration of the travel visa, Mr. Alonzo received a note from Ms. Pineda informing him that she had taken Maria

Jose. Despite a diligent search, which included assistance from the Durham Police Department and the local Hispanic Center, Mr. Alonzo was unable to locate Maria Jose. Mr. Alonzo next sought counsel from the Honduran Embassy and was advised to return to Honduras to pursue Maria Jose's return through the proper international channels.

On September 19, 2006, Mr. Alonzo filed a petition for the return of Maria Jose under the Hague Convention. (Doc. # 2.) On November 9, 2006, Mr. Alonzo filed a petition requesting the government to take physical custody of Maria Jose pursuant to 42 U.S.C. § 11604(a) and N.C. Gen. Stat. § 50A-311.[1] (Doc. # 5.) On January 24, 2007, following a hearing, the petition to take physical custody was granted and a warrant was issued for the United States Marshal's Service to take custody of Maria Jose. (Doc. # 9.) The warrant was executed on January 24, 2007 and a second hearing was held that day. Ms. Pineda was granted a continuance to retain counsel. Further, at the request of Ms. Pineda, Maria Jose remained in the custody of Mr. Alonzo pending the resolution of this matter. A

---

[1] Pursuant to ICARA, a court "may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604(a). Under North Carolina law, a court may issue a warrant to take physical custody of a child if, based on testimony of the petitioner or other witnesses, it is found "that the child is imminently likely to suffer serious physical harm or to be removed from this State." N.C. Gen. Stat. § 50A-311. Cf. McCullough v. McCullough, 4 F. Supp. 2d 411, 414-15 (W.D. Pa. 1998) (invoking 42 U.S.C. § 11604(a) in ordering the United States Marshal to bring the child before the court).

3

hearing on the merits of the petition to return Maria Jose to Honduras was held on February 2, 2007, and this matter is ready for a ruling.

II.

Congress enacted ICARA in 1988 to "establish procedures for the implementation of the [Hague] Convention in the United States." 42 U.S.C. § 11601(b)(1); see 42 U.S.C. §§ 11601-11610. The Hague Convention seeks to protect children from the harmful effects of international parental child abduction by establishing civil procedures to ensure that abducted children are promptly returned to the country of their "habitual residence." Hague Convention, pmbl., art. 1, 19 I.L.M. at 1501. "[T]he primary purpose of the Hague Convention is 'to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court.'" Miller v. Miller, 240 F.3d 392, 398 (4th Cir. 2001) (quoting Friedrich v. Friedrich, 983 F.2d 1396, 1400 (6th Cir. 1993) ("Friedrich I")).

Under the Hague Convention, "[t]he merits of any underlying custody case are not at issue." Id. (emphasis in original). The country of the child's "habitual residence" is the proper arbiter of the custody dispute. Instead, courts are tasked with securing "the prompt return of children wrongfully removed to or retained in any Contracting State" to the country of the child's "habitual residence." Hague Convention, art. 1, 19 I.L.M. at 1501.

A.

Mr. Alonzo bears the initial burden of proving by a preponderance of the evidence "that the child has been wrongfully removed or retained within the meaning of the Convention." 42 U.S.C. § 11603(e)(1)(A). Article 3 of the Hague Convention states that:

> The removal or retention of a child is to be considered wrongful where-
>
> a. it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b. at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
>
> The rights of custody mentioned in sub-paragraph a above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Hague Convention, art. 3, 19 I.L.M. at 1501. Therefore, to establish a prima facie case of wrongful retention, Mr. Alonzo must establish: (1) that Maria Jose was a "habitual resident" of Honduras at the time of the retention; (2) that the retention was in breach of his custody rights under the law of Honduras; and (3) that he had been exercising those rights at the time of the retention. Bader v. Kramer, 445 F.3d 346, 349 (4th Cir. 2006); Miller, 240 F.3d at 398.

To be deemed "wrongfully retained," the retention must be away from the child's country of "habitual residence." The interpretation of "habitual residence" is vitally important to the Convention because it will dictate both the child's

5

ultimate destination and the arbiter of the custody dispute. However, neither the Hague Convention nor ICARA actually define the term "habitual residence."

The Fourth Circuit has concluded "that 'there is no real distinction between ordinary residence and habitual residence.'" Miller, 240 F.3d at 400 (quoting Friedrich I, 983 F.2d at 1401 (citing In re Bates, No. CA 122.89, High Court of Justice, Family Div'n Ct. Royal Court of Justice, United Kingdom (1989)). "'A person can have only one habitual residence. On its face, habitual residence pertains to customary residence prior to the removal [or retention]. The court must look back in time, not forward." Id. (quoting Friedrich I, 983 F.2d at 1401). "[A] child's habitual residence is the place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a 'degree of settled purpose' from the child's perspective." Feder v. Evans-Feder, 63 F.3d 217, 224 (3d Cir. 1995). This is a fact-specific inquiry that should be made on a case-by-case basis. Miller, 240 F.3d at 400.

Because a young child does not usually have a "settled purpose" independent of that of his or her parents, a court should look to "the settled purpose and shared intent of the child's parents in choosing a particular habitual residence." Whiting v. Krassner, 391 F.3d 540, 550 (3d Cir. 2004). "The shared intentions of both parents for a child to establish a residence at a particular location, coupled with actions to establish the residence, may create a new habitual residence within a short time period." Samholt v. Samholt, No.

6

1:06CV00407, 2006 WL 2128061, at *2 (M.D.N.C. July, 26, 2006) (citing Feder, 63 F.3d at 224-25 and Humphrey v. Humphrey, 434 F.3d 243, 248 (4th Cir. 2006)). Importantly, the emphasis is on the shared intentions of both parents rather than unilateral intentions of one parent. Id. (citing Feder, 63 F.3d at 224) (emphasis added). "[A] parent cannot create a new habitual residence by wrongfully removing [or retaining] and sequestering a child." Miller, 240 F.3d at 400 (citing Diorinou v. Mezitis, 237 F.3d 133, 141-42 (2d Cir. 2001)).

B.

If Mr. Alonzo is able to satisfy his initial burden of establishing wrongful retention, Maria Jose must be returned to Honduras unless Ms. Pineda can establish one of five available defenses. See 42 U.S.C. § 11603(e)(2)(A) (requiring proof by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Hague Convention applies); 42 U.S.C. § 11603(e)(2)(B) (requiring proof by a preponderance of the evidence that one of the exceptions set forth in article 12 or 13 of the Hague Convention applies).

The exceptions set forth in Articles 13b and 20 that must be established by clear and convincing evidence are: (1) that there was a grave risk that Maria Jose's return to Honduras would expose her to physical or psychological harm or otherwise place her in an intolerable situation, Hague Convention, art. 13b, 19 I.L.M. at 1502; or (2) that the return of Maria Jose to Honduras would not be permitted by the fundamental principles of the United States "relating to the

7

protection of human rights and fundamental freedoms[,]" Hague Convention, art. 20, 19 I.L.M. at 1503.

The exceptions set forth in Articles 12 and 13 that must be established by a preponderance of the evidence are: (1) that this action was not commenced within one year of the abduction, and Maria Jose is now settled in the United States, Hague Convention, art. 12, 19 I.L.M. at 1502; (2) that Mr. Alonzo "was not actually exercising the custody rights at the time of . . . retention, or had consented to or subsequently acquiesced in the . . . retention[,]" Hague Convention, art. 13a, 19 I.L.M. at 1502; or (3) that Maria Jose "objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [her] views[,]" Hague Convention, art. 13 ¶ 2, 19 I.L.M. at 1502-03.

These exceptions are to be narrowly interpreted and applied. The exceptions "are not a basis for avoiding return of a child merely because an American court believes it can better or more quickly resolve a dispute." Friedrich v. Friedrich, 78 F.3d 1060, 1067 (6th Cir.1996) ("Friedrich II"). In fact, the courts retain the discretion to order the return of a child even if one of the exceptions is proven if such return would further the aims of the Hague Convention. Id.; Miller, 240 F.3d at 402; Feder, 63 F.3d at 226.

III.

Mr. Alonzo has established by a preponderance of the evidence that he had

8

Case 1:06-cv-00800-NCT-PTS   Document 13   Filed 02/09/07   Page 8 of 13

lawful custody of Maria Jose under the most recent Honduran custody order (<u>compare</u> Pet'r Exs. 1, 2 <u>with</u> Resp't Ex. 2.)[2] and that he was exercising his custody rights at the time Maria Jose was taken by Ms. Pineda. The determinative issue is, therefore, whether or not Maria Jose was a "habitual resident" of Honduras when she was taken by Ms. Pineda on June 14, 2005. Mr. Alonzo argues that he came to the United States with Maria Jose in an effort to rekindle his relationship with Ms. Pineda and to persuade her to return home to Honduras. He insists that he and Maria Jose had no intention of remaining in the United States long term.

Ms. Pineda contends, on the other hand, that she and Mr. Alonzo had the mutually shared intention of remaining in the United States indefinitely. In support of this contention, Ms. Pineda points out that Maria Jose was enrolled in school and that Mr. Alonzo obtained employment in violation of his tourist visa, opened a bank account, obtained a driver's license, and helped her purchase a vehicle.

If there were truly a shared intent to remain in the United States, however, it would have been unnecessary for Ms. Pineda to take Maria Jose and Mr. Alonzo's passports to prevent them from returning to Honduras. Ms. Pineda simply cannot create a new habitual residence by preventing Mr. Alonzo from returning to Honduras with Maria Jose. <u>See</u> <u>Miller</u>, 240 F.3d at 400. Such action is

---

[2] Whether the Honduran custody order granting Mr. Alonzo "Provisional Guardianship and Care" of Maria Jose is of limited duration is not an issue before the Court.

9

tantamount to a constructive wrongful retention. Without the ability, or perceived ability,[3] to leave the United States, it was necessary for Mr. Alonzo to earn a living and commendable for him to pursue educational opportunities for his daughter.

Further, considering Maria Jose and Ms. Pineda's illegal immigration status, there cannot be the "degree of settled purpose" required to establish habitual residency in the United States. It is impossible to be settled when you are subject to arrest and deportation at any time. See Kijowska v. Haines, 463 F.3d 583, 587 (7th Cir 2006) ("Indeed, as an illegal alien, she could be arrested and deported at any time; her link to this country was particularly tenuous."); In re Ahumada Cabrera, 323 F. Supp. 2d 1303, 1311 ("[C]onsidering the child's current immigration status . . . it is difficult to find that the child has any settled purpose whatsoever."). Ms. Pineda has taken no steps to acquire legal status in the United States and, despite no family ties in the country, intends to remain as long as possible. Maria Jose was, therefore, a "habitual resident" of Honduras at the time Ms. Pineda took her on June 14, 2005.

Because Mr. Alonzo has established a prima facie case of wrongful retention, Maria Jose must be returned to Honduras unless Ms. Pineda can establish one of the five available defenses. Ms. Pineda made the general argument that there was

---

[3] It was suggested during the evidentiary hearing that a passport was unnecessary to travel between the United States and Honduras.

10

a grave risk that the return of Maria Jose to Honduras would expose her to physical or psychological harm or otherwise place her in an intolerable situation. The risk she cites is not from being in Mr. Alonzo's custody but pertains to the general nature of life in Honduras.  See Hague Convention, art. 13b, 19 I.L.M. at 1502.  Ms. Pineda offered no evidence in support of this claim, much less the clear and convincing evidence required under the Convention.  In fact, the contention is belied by Ms. Pineda's very actions.  It cannot be found that the general living conditions in Honduras either pose a grave risk of harm or create an intolerable situation considering the fact that Ms. Pineda voluntarily left Maria Jose in Honduras when she came to the United States for an extended period of time. Also, because Ms. Pineda made an unsolicited request to the Court for Maria Jose to remain in Mr. Alonzo's custody pending the resolution of this matter, it cannot be found that returning Maria Jose to her father would pose a grave risk of harm or create an intolerable situation.

Ms. Pineda also requested that Maria Jose be heard on the matter and that her opinion be taken into account. See Hague Convention, art. 13 ¶ 2, 19 I.L.M. at 1502-03. It is clear, however, that an eight year old child has not "attained an age and degree of maturity at which it is appropriate to take account of [her] views."  See, e.g., Hazbun Escaf v. Rodriquez, 200 F. Supp. 2d 603, 615 (E.D. Va. 2002) (finding a "normal child of thirteen" not to be mature enough to take account of his views).  At such a young age, Maria Jose is highly susceptible to

11

manipulation. There is a recognized tendency for a child to be unduly influenced by the preferences of the parent with whom he or she lives. See, e.g., Giampaolo v. Erneta, 390 F. Supp. 2d 1269, 1285 (N.D. Ga. 2004) (stating that the child "has been influenced by [the abducting parent's] preference for her to remain here" and noting that "[t]he Child appears to have internalized [the abducting parent's] views about the possibility of being returned to Argentina"); Hazbun Escaf, 200 F. Supp. 2d at 610 (finding that a thirteen year old boy's "statements regarding reasons for staying in the United States appear to be the product of suggestion, echoing the preferences of his father").

In addition, none of the remaining three defenses apply in this case. While this action was not commenced within one year of Ms. Pineda's abduction of Maria Jose, Maria Jose cannot be considered "settled" in the United States considering her illegal status and the illegal status of her mother. See Hague Convention, art. 12, 19 I.L.M. at 1502. As discussed above, it is impossible to be settled when you are always subject to arrest and deportation. Finally, no evidence was presented to suggest that Mr. Alonzo consented to or acquiesced in Ms. Pineda's retention of Maria Jose or that returning Maria Jose to Honduras would raise fundamental freedom or human rights concerns. See Hague Convention, arts. 13, 20, 19 I.L.M. at 1502-03.

IV.

For the reasons set forth above, Petitioner Ovidio Danilo Alonzo's Petition for

12

Return of Child to Petitioner is GRANTED.  (Doc. # 2.)

    This the day of February 9, 2007

                                                          /s/ N. Carlton Tilley, Jr.
                                                       United States District Judge